UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK
--------------------------------------------------

In re:
TIMOTHY and REGINA HOWE,

                                      Chapter 7
                                      Case No. 08-10551

                      Debtors.

--------------------------------------------------

Appearances:
Rodriguez & Doern, PLLC                                  James E. D. Doern, Esq.
*Attorneys for the Debtors*
100 West Avenue
Saratoga Springs, NY 12866-2141

Christian H. Dribusch, Esq.
*Chapter 7 Trustee*
The Patroon Building
5 Clinton Square
Albany, NY 12207

Hon. Robert E. Littlefield, Jr., Chief United States Bankruptcy Judge

## MEMORANDUM-DECISION AND ORDER

The issue before the court is whether Timothy and Regina Howe ("Debtors") may amend Schedules B and C of their petition to disclaim their previously elected homestead exemption and claim a cash exemption instead. The Trustee filed an objection to the Debtors' amended cash exemption pursuant to 11 U.S.C. § 522(a)[1] and Federal Rule of Bankruptcy Procedure ("F.R.B.P.") 4003(b).

## JURISDICTION

The court has jurisdiction over this core proceeding pursuant to 28 U.S.C. §§ 157(a),

---

[1] All statutory references herein are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, unless otherwise indicated.

157(b)(1), 157(b)(2)(B), and 1334.

## FACTS

The Debtors filed a voluntary Chapter 7 petition on February 29, 2008.  (Doc. No. 1.)  On Schedule A (Real Property), the Debtors listed their residence located at 2029 State Route 22, Cambridge, New York (the "Cambridge Residence"), which they valued at $106,972.  The Debtors indicated that the Cambridge Residence was subject to the secured claim of Wells Fargo Home Mortgage ("Wells Fargo") in the amount of $51,084.  The Debtors claimed a homestead exemption of $100,000 for the Cambridge Residence on Schedule C (Property Claimed As Exempt).  Schedule B (Personal Property) reveals, *inter alia*, that as of the filing date, the Debtors had $2 in cash and $500 in their accounts at TCT Federal Credit Union  (hereinafter collectively "Cash").  No exemption was claimed for the Cash.

Wells Fargo filed a Motion for Relief from Stay on April 3, 2008, seeking an order permitting it to proceed with an action to foreclose its mortgage against the Cambridge Residence based upon the Debtors' payment defaults.  (Doc. No. 9.)  The Debtors did not oppose the motion, and it was granted by order entered on April 24, 2008.  (Doc. No. 12.)

Prior to the Debtors' meeting of creditors held pursuant to § 341 (the "Meeting of Creditors"), the Debtors' counsel sent the Trustee copies of the Debtors' 2006 income tax returns.  (Trustee's Obj. to Exemption (Doc. No. 24) ¶ 6.)   Based upon the Debtors' 2006 income tax returns, the Trustee believed the Debtors would be entitled to a federal tax refund for 2007. (Trustee's Obj. to Exemption ¶ 9.)   Thus, on March 5, 2008, the Trustee sent the Internal Revenue Service ("I.R.S.") a Turnover Application directing that the Debtors' refund be turned over to him as Trustee of the Debtors' bankruptcy estate.  (Trustee's Obj. to Exemption  ¶ 9.)

The Debtors did not schedule an anticipated 2007 tax refund as an asset on Schedule B.

On April 7, 2008, the Debtors appeared at the Meeting of Creditors.  The Trustee questioned them about their 2007 income tax returns, and the Debtors briefly explained they were in the process of completing their tax forms.  (Doern Supp. Aff. (Doc. No. 31) Ex. A.) While there was a brief discussion regarding the Cambridge Residence and who owned it, there was no mention, by either party, of Wells Fargo's pending Motion for Relief from Stay.  (Doern Suppl. Aff. Ex. A.)  Following the Debtors' testimony, the Trustee closed the Meeting of Creditors.  The Debtors timely filed their 2007 tax returns on or about April 12, 2008. (Response to Trustee's Mot. (Doc. No. 28) ¶ 7.)  On June 9, 2008, the Debtors were granted a discharge.  (Doc. No. 13.)

The time to object to the Debtors' originally scheduled exemptions expired on or about May 8, 2008.  *See* Fed. R. Bankr. P. 4003(b).  No objections to the Debtors' originally scheduled exemptions were filed.

For reasons unknown, the Trustee never received the Debtors' 2007 tax refund or their subsequent economic stimulus check from the I.R.S.  (Trustee's Obj. to Exemption ¶ 10.)  The Debtors, presumably, received their 2007 tax refund in, or before, early June 2008,[2] and their economic stimulus check in July 2008 (Response to Trustee's Mot. ¶ 4) (hereinafter collectively "Tax Refunds").  In or about August 2008, the Trustee requested copies of the Debtors' 2007 income tax returns from the Debtors' counsel to verify that the Debtors had not received a tax refund.  (Response to Trustee's Mot. ¶ 7.)  The Debtors' counsel responded by letter dated August 18, 2008 that, to the contrary, the Debtors had received the Tax Refunds.  (Response to

---

[2]According to the I.R.S., refunds are issued, on average, six weeks after returns are received.  Internal Revenue Service, http://irs.gov/taxtopics/tc152.html (last visited June 24, 2009).

3

Trustee's Mot. Ex. C.)  The Debtors' counsel also indicated that if it was the Trustee's intention to administer the Tax Refunds his clients would amend schedule C to claim a cash exemption instead of their homestead exemption.  (Response to Trustee's Mot. Ex. C.)

On October 10, 2008, the Trustee filed a Motion for Turnover of the Cash and the Tax Refunds.  (Doc. No. 15.)  The Debtors filed opposition to the motion, and the Trustee filed a response.[3]  (Doc. Nos. 20, 22.)  On November 13, 2008, the Debtors amended Schedules B and C of their petition to (1) include the Tax Refunds totaling $1,607.90 as assets, (2) disclaim their homestead exemption, and (3) claim a cash exemption of $2,109.90 for the Cash and the Tax Refunds.  (Doc. No. 23.)  The Trustee filed his Objection to Exemption and Request for Turnover on November 18, 2008.  The Debtors filed opposition to the Objection.  At the conclusion of oral argument, the parties were given the opportunity to file memoranda of law in support of their positions.  The final submission was filed on January 28, 2009, at which time this matter was taken under advisement.

## ARGUMENTS

In his original motion papers, the Trustee asserts that the amended cash exemption should be denied based upon the Debtors' bad faith and concealment of assets.  At the conclusion of oral argument, however, the parties requested that the court not address the question of fact in the first instance.  Instead, the court was asked to decide a pure question of law, namely, regardless of the Debtors' intentions, may they claim a homestead exemption and then, approximately eight months later, take a cash exemption in its place?

The Trustee argues the Debtors' amended cash exemption should be denied because once

---

[3]The Trustee's Motion for Turnover was adjourned pending the issuance of this Memorandum-Decision and Order.

the time to object to the Debtors' homestead exemption expired, the exempt property vested in the Debtors and, absent express Bankruptcy Code authority for the recapture of exempt property to the bankruptcy estate, a debtor is not authorized to revest property through the filing of an amendment.  The Trustee asserts further that because the Debtors' homestead is no longer property of the bankruptcy estate pursuant to § 541, the bankruptcy court no longer has jurisdiction over it.

While the Trustee acknowledges that F.R.B.P. 1009(a) provides debtors with the right to amend their schedules, he points out that the rule only governs procedure and does not confer a substantive right.  The Trustee asserts that such authority would have to be granted by the Bankruptcy Code, and there is no Code provision conferring such a substantive right.  Lastly, the Trustee argues that, in the event the court allows the amended exemptions, he should be compensated because he has been prejudiced as a result of expending time and effort in attempts to administer the Tax Refunds.

The Debtors assert that pursuant to F.R.B.P. 1009(a) they may amend their schedules at any time before their case is closed.  Thus, the Debtors argue that because their case had not been closed, they had the absolute right to amend their exemptions.  The Debtors also contend that the Tax Refunds are nominal and not beneficial to the estate if the Trustee's commission, the cost of any litigation, and the amount that would ultimately be distributed to creditors are taken into consideration..  Finally, the Debtors argue that allowing the amendment to their exemptions would be in accordance with the Bankruptcy Code's policy of maximizing a debtor's "fresh start."

**DISCUSSION**

Under the authority of § 522(b)(1), New York has "opted out" of the federal property exemption provisions pursuant to § 522(d) and enacted its own exemption statutes. *See* N.Y. Debt. & Cred. Law §§ 282-284 (McKinney 2001). New York, under Debtor and Creditor Law § 283(2),[4] permits a $2,500 cash exemption for a debtor who has "not elect[ed], claim[ed], or otherwise avail[ed]" him or herself of the homestead exemption under NYCPLR § 5206, "or who has not claimed the maximum $5,000 exemption in the aggregate for personal property under NYCPLR § 5205." *In re Cinelli*, No. 05-16962, 2006 WL 3545444, at *3 (Bankr. N.D.N.Y. Dec. 8, 2006) (citing *In re Hill*, 95 B.R. 293, 298 (Bankr. N.D.N.Y. 1988)).

The laws regarding exemptions in New York are clear. "A debtor may claim either a homestead exemption or a cash exemption, but not both." *In re Gross*, 394 B.R. 693, 696 (Bankr. W.D.N.Y. 2008). A debtor's choice to claim a homestead exemption precludes any claim to a cash exemption and vice versa. *Id.* In this case, the Debtors chose, at first, to claim a homestead exemption of $100,000 to the exclusion of a cash exemption. They now seek to change their exemption to cash to the exclusion of the homestead exemption.

---

[4]**§ 283. Aggregate individual bankruptcy exemption for annuities and personal property**
2. Contingent alternative bankruptcy exemption. Notwithstanding section two hundred eighty-two of this article, a debtor, who (a) does not elect, claim, or otherwise avail himself of an exemption described in fifty-two hundred six of the civil practice law and rules; (b) utilizes to the fullest extent permitted by law as applied to said debtor's property, the exemptions referred to in subdivision one this section which are subject to the five thousand dollar aggregate limit; and (c) does not reach such aggregate limit, may exempt cash in the amount by which five thousand dollars exceeds the aggregate of his exemptions referred to in subdivision one of this section or in the amount of two thousand five hundred dollars, whichever amount is less. For purposes of this subdivision, cash means . . . the right to receive a refund of federal, state and local income taxes.
N.Y. Debt. & Cred. Law § 283(2) (McKinney 2001).

Debtors may, under F.R.B.P. 1009(a),[5] amend their bankruptcy schedules, including Schedule C, at anytime before their case is closed. Case law supports a debtor's right to freely amend their exemptions. *See Cinelli*, 2006 WL 3545444, at *3; *In re Fournier*, 169 B.R. 282, 283 (Bankr. D. Conn. 1994). Nevertheless, contrary to the Debtors' assertion, the right to amend is not equivalent to the right to the exemption. *In re Blaise*, 116 B.R. 398, 399 (Bankr. D. Vt. 1990). While a debtor may have the right to freely amend Schedule C, this does not equate to a substantive right to the exemption.

The objecting party bears the burden of proving by a preponderance of the evidence that the exemption claimed by a debtor is improper. Fed. R. Bankr. P. 4003(c); s*ee In re Pless*, 202 B.R. 664, 666 (Bankr. N.D.N.Y. 1996) (citing *In re McNeill*, 193 B.R. 654, 659 (Bankr.E.D.N.Y.1996) (citations omitted)). Assuming a legal basis for the amended exemption exists, when a party objects, "'allowance of the amended exemption depends on other considerations, namely, whether there is a showing of bad faith by the debtor or prejudice to creditors.'" *In re Cinelli*, 2006 WL 3545444, at *3 (quoting *In re Blaise*, 116 B.R. 398, 399 (Bankr.D.Vt.1990)).

Regardless of whether the Debtors can take a cash exemption after having already elected a homestead exemption under New York Debtor and Creditor Law § 283(2), prejudice to creditors is clearly present in this case. While the Trustee argues that he has been prejudiced as a result of his efforts to administer what he reasonably believed to be non-exempt assets, the court

---

[5] **Rule 1009. Amendments of Voluntary Petitions, Lists, Schedules and Statements**
**(a) General Right to Amend.** A voluntary petition, list, schedule, or statement may be amended by the debtor as a matter of course at any time before the case is closed. The debtor shall give notice of the amendment to the trustee and to any entity affected thereby.
Fed. R. Bankr. P. 1009(a)

takes judicial notice of the prejudice to the creditors that is in the record before it. The Debtors, when they filed their original petition in February 2008, listed the Cambridge Residence as having a value of $106,972, with a secured claim against it of $51,084. These representations indicate the Debtors believed there was more than $55,000 of equity in the Cambridge Residence. These representations were not modified when the Debtors amended their schedules in November 2008, reiterating the Debtors' belief that substantial equity existed in the Cambridge Residence at the time their petition was filed. Nevertheless, when Wells Fargo filed its Motion for Relief from Stay in April 2008, the Debtors allowed the motion to be granted by default. The actions, and/or inactions, by the Debtors denied the Trustee of the opportunity to market the Cambridge Residence and, ultimately, endeavor to turn the $55,000 of potential equity into cash for the benefit of the bankruptcy estate. When the Debtors allowed the Motion for Relief from Stay to be granted without opposition, the Debtors essentially walked away from $55,000 of equity at the expense of their creditors.

The Debtors now seek to change direction and exempt $2,109.90 in cash in place of their homestead exemption, leaving the Trustee unable to administer either the certainty of the Debtors' cash or the potential equity in the Cambridge Residence. In light of the foregoing, the court finds the record establishes by a preponderance of the evidence that the amended cash exemption claimed by the Debtors is prejudicial to the Debtors' creditors. The Trustee's argument concerning his own prejudice is moot for he is now free to administer the Cash and the Tax Refunds and apply for the proper statutory compensation.

The Debtors' argument that the Tax Refunds are nominal and should not be administered comes in the wrong context. A court will order a Trustee to abandon property that is of nominal

8

value "on the request of a party in interest and after notice and a hearing." 11 U.S.C. § 554(b). Absent such a motion with the proper notice, the court declines to address any § 554 arguments.

## CONCLUSION

Accordingly, the Trustee's objection to the cash exemption claimed by the Debtors in their amended Schedule C is sustained, and the Trustee's Motion for Turnover (Doc. No. 15) is restored to the court's July 15, 2009 motion calendar at 9:00 a.m.

It is so ORDERED.

Dated: Albany, New York
     June 26, 2009                          /s/ Robert E. Littlefield, Jr.
                                            _____
                                            Hon. Robert E. Littlefield, Jr.
                                            Chief United States Bankruptcy Judge